# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| XAVIER LIGHTFOOT, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No. 08-00907-CV-W-FJG |
| | ) Crim No. 98-00149-01-CR-W-FJG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## ORDER

Currently pending before the Court is Movant's Motion for an Extension of Time to File a Certificate of Appealability (Doc. # 15) and Movant's Application for Issuance of a Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(Doc. # 16).

## I. BACKGROUND

In 1999, Xavier Lightfoot and Cornelius Peoples were convicted of aiding and abetting the murder of a federal witness. In 2001, the Eighth Circuit reversed the convictions and remanded the case for a new trial. Prior to the second trial, Peoples pled guilty and cooperated with the Government. Prior to and during the trial, Lightfoot's counsel sought permission to cross-examine Peoples and Anthony Hunter about their roles in two unsolved Wyandotte County, Kansas murders. However, this request was denied both in writing before the trial and also during the trial. Following a nine day jury trial, Lightfoot was convicted of conspiracy to commit bank robbery, conspiracy to murder a federal witness and the murder of a federal witness on August 2, 2005. Lightfoot was sentenced to a term of life in prison. Lightfoot appealed his conviction

and specifically raised the exclusion of evidence relating to the Wyandotte County homicides. However, the Eighth Circuit found no error and affirmed both the conviction and the sentence. United States v. Lightfoot, 483 F.3d 876 (8th Cir. 2007).

On December 1, 2008, Lightfoot filed a Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255 (Doc. #1). After considering the parties briefs and argument, this Court denied the Motion on February 3, 2010. On April 15, 2010, Lightfoot filed the instant Motion for a Certificate of Appealability.

## II. STANDARD

> A COA will issue only if the requirements of §2253 have been satisfied. The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal. . . . § 2253(c) permits the issuance of a COA only where a petitioner has made a substantial showing of the denial of a constitutional right. . . .Under the controlling standard, a petitioner must sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

Miller-El v. Cockrell, 537 U.S. 322, 336,123 S.Ct. 1029, 1039,154 L.Ed.2d 931 (2003)(internal citations and quotations omitted).

## III. DISCUSSION

**A. Motion for An Extension of Time**

The Order denying Lightfoot's §2255 motion to vacate, set aside or correct his sentence was entered on February 3, 2010. However, the Court did not at that time rule on whether a certificate of appealability should issue. On March 24, 2010, Lightfoot filed a Motion requesting thirty additional days in which to file a Motion for a Certificate of Appealability. In the Motion seeking an extension of time, Lightfoot gave no reason or

2

explanation as to why he needed an additional thirty days in which to file the Motion. On April 15, 2010, Lightfoot filed his Motion and Suggestions in Support of the Motion for a Certificate of Appealability.

Rule 11(a) of the Rules Governing Section 2255 Proceedings states in part:

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . .If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2). If the court denies a certificate, a party may not appeal the denial, but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

In Williams v. Finn, No. 2:07-CV-01925AK, 2009 WL 4906518 (E.D.Cal. Dec. 18, 2009), petitioner filed a motion for an extension of time to request a certificate of appealability. Petitioner filed the motion within thirty days of the deadline for filing a notice of appeal. The Court found that pursuant to Fed.R.App.P. 4(a)(5)(A)(ii), petitioner was required under the rule to demonstrate excusable neglect. The Court in that case found that petitioner had demonstrated excusable neglect because he stated that his prison job and the prison library hours made it impossible for him to timely request a certificate of appealability. In the instant case, Lightfoot had sixty days or until April 5, 2010, in which to file his notice of appeal. The Motion for an Extension of Time was filed on March 24, 2010, which was before the expiration of the deadline, but Lightfoot gave no reason for seeking the extension. Therefore, the Court finds that because Lightfoot failed to show "excusable neglect" or "good cause" there is no basis on which to grant his Motion for an Extension of Time. However, even if the Court were to grant the Motion for an Extension of Time, as explained below, the Court finds that there are no grounds on which to grant the Motion for a Certificate of Appealability.

3

### B. Motion for a Certificate of Appealability

Lightfoot is seeking a Certificate of Appealability on two issues: A) Whether reasonable jurists could find this Court's assessment that Lightfoot's counsel was not ineffective for his failure to examine Peoples regarding any deals or understandings he had with the Government about the Wyandotte County murders debatable or wrong or that any court would resolve those issues differently; B) Whether reasonable jurists could find this Court's assessment that Lightfoot's counsel was not ineffective for his failure to make an offer of proof regarding Hunter's testimony about the Wyandotte County homicides. These are the same two arguments which Lightfoot raised in his 28 U.S.C. §2255 motion.

#### 1. Failure to Examine Peoples Regarding Any Deals or Understandings He Had With the Government.

Lightfoot argues that during oral argument before the Eighth Circuit, the Government acknowledged that Peoples was prepared to testify if there had been any charges filed in state court. The Government stated that Peoples gave a statement to the police that Anthony Hunter had committed the murders. Lightfoot argues that this completely contradicts the statement made by Peoples that he had never been asked to provide testimony about Hunter's involvement.

As this Court explained in the Order denying Lightfoot's § 2255 motion, "because [Lightfoot's] attorney was able to bring out Peoples' motivation for testifying though other means, counsel's failure to ask Peoples about any deals or understandings with the Government was not unreasonable." Lightfoot v. United States, No. 08-00907-CV-W-FJG, 2010 WL 455123, *2 (W.D.Mo. Feb. 3, 2010). As the Eighth Circuit explained

4

in Lightfoot's direct appeal:

> The Confrontation Clause guarantees defendants the opportunity to effectively cross-examine adverse witnesses . . .A defendant's Confrontation Clause rights are not boundless, however, and trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. . . . A key factor in determining whether a defendant's right of confrontation has been violated is whether the defendant had other means at his disposal to obtain the effect that the excluded examination would have allegedly established.

Lightfoot, 483 F.3d at 879-880 (internal citations and quotations omitted). The Eighth Circuit noted that Lightfoot was concerned that the District Court had prevented him from exposing the motivations and credibility problems of Peoples, Hunter and Larry Platt. However, the Eighth Circuit stated:

> The jury learned that Peoples was a gang-affiliated criminal with a prior felony conviction for aggravated battery. Peoples acknowledged that he had lied to law enforcement about the robberies. Peoples also stated that he had reached a plea agreement with the government, that he had not wanted to risk the death penalty for his involvement in Ross's murder, and that he was hoping for a sentencing reduction for his cooperation in the case. As for Hunter, he stated that he had a prior conviction for aggravated robbery and testified that he had been an "enforcer" in a street gang. Hunter also acknowledged that he had pled guilty to aiding and abetting Ross's murder pursuant to a plea agreement and that he had received a sentencing reduction. The jury heard Platt testify that he had prior convictions and that he had been involved in a number of crimes. Platt stated that he had entered into a plea agreement with the government, pursuant to which he pled guilty to transporting stolen property across state lines and agreed to testify against others. Platt acknowledged that he hoped for a sentencing benefit in the case. He also stated that he had cooperated against codefendants in another case, after which he received probation. Platt also acknowledged that he had repeatedly lied to law enforcement about what he knew about the bank robberies and that he had falsely denied knowing anything about Ross's murder.

Id. at 880. The Eighth Circuit concluded that "[b]ecause Lightfoot was able to establish

5

Hunter's and Peoples's hopes for leniency as their motivation for testifying in this case through other means, the district court did not abuse its discretion in precluding examination regarding collateral and uncharged prior bad acts and speculative, unspoken agreements between the government and the witnesses." Id. at 882. Additionally, the Eighth Circuit noted that "[a]lthough Lightfoot alludes to unspoken understandings between the government and the witnesses, the record reflects no agreements that Peoples or Hunter would receive any leniency for the Wyandotte County murders, and neither plea agreement contains provisions immunizing Peoples or Hunter from state or local prosecution." Id.

Other courts have also agreed with this analysis. In United States v. Dale, 614 F.3d 942 (8th Cir. 2010), cert denied, 2011 WL 1225742 (2011) and 2011 WL 1225744 (2011), the district court prohibited one of the defendants from cross-examining two witnesses about his co-defendant's involvement in an unrelated state murder charge, because such testimony would have been unduly prejudicial. The Court stated:

> [t]he touchstone of our inquiry, therefore, is whether Johnson was given an adequate opportunity to impeach the credibility of Powell and Taylor. In the case of Powell, although Johnson was prohibited from asking about the Torrez Rodriquez murder case, counsel for Johnson elicited testimony from Powell during cross-examination stating that Powell had pleaded guilty in a federal drug conspiracy case, in which he faced a minimum twenty-year sentence, and that he was hoping for a downward departure on that case. . . . Because Johnson was permitted to impeach Powell's credibility in this way, we cannot say the district court abused its discretion in limiting Johnson's cross-examination of Powell. . . . We reach the same conclusion with respect to Taylor. Johnson wished to impeach Taylor by eliciting testimony that Taylor lied to police when questioned about the Torrez Rodriquez murder case. But we have held that where the defendant is given an alternative means of impeachment, there is no Confrontation Clause violation.

Id. at 957 (internal citations omitted).

Therefore, the Court does not find that a Certificate of Appealability should issue on this question because Lightfoot has not made a "substantial showing that his counsel fell short of Sixth Amendment standards and that but for this shortcoming, the result of the [trial] would have been different." Crowe v. United States, No. Civ. 09-3030-KES, 2011 WL 310758, *1 (D.S.D. Jan. 28, 2011).

### 2. Failure to Make an Offer of Proof Regarding Hunter's Testimony About the Wyandotte County Homicides.

Lightfoot argues that if his counsel had made an offer of proof regarding Anthony Hunter's testimony, then the Eighth Circuit would not have been able to say that this Court did not abuse its discretion in excluding the evidence of the Wyandotte County homicides and Hunter's involvement. Lightfoot also argues by citing to testimony from the first trial of this case, that Peoples's attorney had attempted to frame Larry Platt for the Wyandotte County murders. The Eighth Circuit in ruling on Lightfoot's direct appeal noted that "[e]vidence that Peoples or Hunter had attempted to 'frame' the other was potentially relevant." However, the Court concluded that the evidence did not clearly indicate that either Peoples or Hunter had attempted to frame the other. Lightfoot, 483 F.3d at 883 n.9. The Eighth Circuit noted that in Hunter's recorded witness statement, he does not accuse Peoples of the murders. Id. at 882.

As noted earlier, even though Lightfoot did not make an offer of proof, the issue was briefed before trial began and counsel raised the issue again during trial. Therefore, the Court does not find that Counsel's failure to make an offer of proof was unreasonable. Additionally, even if the Court were to assume that the failure to make the offer of proof was unreasonable, Lightfoot has not shown that he was prejudiced.

7

The jury learned that Hunter had a prior conviction for aggravated robbery and that he had been an "enforcer" in a street gang. Hunter also acknowledged that he had pled guilty to aiding and abetting Ross's murder pursuant to a plea agreement and that he had received a reduced sentence. Counsel was able to expose Peoples and Hunter's credibility problems and motivations for testimony through other means. It is unlikely that any further questioning of Hunter on uncharged and unrelated homicides in Wyandotte County would have changed the outcome of Lightfoot's trial. The Court does not find that Lightfoot has made a substantial showing that his counsel fell short of his Sixth Amendment standards and that but for this shortcoming, the outcome of his trial would have been different.

### III. CONCLUSION

For the reasons stated above, the Court does not find that the issues presented by Lightfoot are "'debatable among reasonable jurists', that different courts 'could resolve the issues differently', or that the issues otherwise 'deserve further proceedings.'" United States v. Smith, No. 10-2596 (RHK), 2010 WL 4683536,*1 (D.Minn. Nov. 12, 2010), citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir.1994).

Accordingly, Lightfoot's Motion for an Extension of Time to File a Certificate of Appealability (Doc. # 15) is hereby **DENIED** and Lightfoot's Application for Issuance of a Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(Doc. # 16) is hereby **DENIED**.

Date: 04/07/11
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
Chief United States District Judge